Kent G. ALEXANDER, Plaintiff,

v.

William A. PERRILL, individually and in his official capacity as Warden, FCI–Tucson; Luis Rivera, individually and in his official capacity as the Manager of the Administrative Systems Unit at FCI–Tucson; Edgar Haynes, individually and in his official capacity as Chief of Administrative Systems for the Federal Bureau of Prisons, Washington, D.C.; Mary Ellen Warlow, individually and in

her official capacity as a Senior Trial Attorney for United States Department of Justice, Washington, D.C.; and Phillip T. White, individually and in his official capacity as Director of International Affairs, United States Department of Justice, Washington, D.C., Defendants.

No. CIV 87–582–TUC–RMB.

United States District Court, D. Arizona, Tucson Division.

Oct. 27, 1993.

---

A. Bates Butler, III, Tucson, AZ, for plaintiff.

Janet Napolitano, U.S. Atty., Eugene R. Bracamonte, Asst. U.S. Atty., Tucson, AZ, for defendants.

## ORDER

BILBY, District Judge.

## I. STATEMENT OF THE CASE

Plaintiff, Kent G. Alexander, filed this *Bivens* action[1] alleging that his constitutional rights were violated when the Bureau of Prisons denied him foreign jail credits on a federal sentence. That denial resulted in Plaintiff wrongfully serving additional time in custody. After carefully considering the pleadings submitted and oral argument the Court concludes that Plaintiff's due process rights were violated when the Defendants recalculated Plaintiff's jail credits without notice and an opportunity to be heard. Plaintiff is also entitled to summary judgment on the issue of liability.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Whether a fact is material depends on the substantive law at issue. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Thus, the mere existence of some factual disputes or some disagreement as to a material fact will not preclude summary judgment. *Thomas v. Douglas*, 877 F.2d 1428, 1431 (9th Cir.1989).

The evidence must not merely present a sufficient disagreement to require submission to a jury, but must be so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. The initial burden rests on the moving party to establish the absence of any genuine issue of material fact. Once satisfied, the burden shifts to the opponent to demonstrate that through production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## III. PROCEDURAL AND FACTUAL BACKGROUND

Alexander was discharged from a three year federal prison sentence on April 9, 1986 and began serving a separate six month sentence at a Tucson half-way house. Some eighty days after release on his three year sentence, Plaintiff was arrested by two United States Marshals for "violation of parole." Alexander was taken to the Federal Correctional Institution at Tucson, Arizona ("FCI–Tucson") on June 23, 1986. On July 3, 1986, Defendant Rivera informed Alexander that his previously completed sentence had been recalculated and extended by 245 days. On July 9, 1993, Alexander was shown a Central Office telex memorandum by Defendant Riv-

---

**1.** In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court decided that citizens may sustain an action for money damages against federal officers for violation of constitutional rights.

era confirming that Alexander was not entitled to the 245 days of previously awarded jail credits against the discharged sentence.

The Bureau of Prisons' policy requires that jail credits from a foreign jail be verified and monitored by the Central Office, Bureau of Prisons in Washington, D.C. ("Central Office"). *See* Bureau of Prisons Program Statement 5880.24.[2] The Central Office recalculated Alexander's sentence based upon its perception that Alexander was not awaiting extradition to the United States when he was held in a West German jail, but instead had been serving a local sentence imposed by the German courts.

At the time of recalculation, William Perrill was the Warden and Luis Rivera was the Administrative Systems Manager of FCI–Tucson. Rivera was under Perrill's supervision and was responsible for computation of jail sentences and any applicable jail time credit for inmates at the institution. After Alexander was shown the Central Office memorandum, he objected orally and in writing to Rivera and Perrill as to the recalculation as well as to the summary manner in which the decision was reached.

On several occasions after his re-incarceration at FCI–Tucson, Alexander met with Rivera and requested a complete investigation. Alexander also presented Rivera with certified court documents which Alexander claimed entitled him to the jail and presentence credits. One such document was a copy of the reporter's transcript of Alexander's October, 1985 district court sentencing. Although Rivera promised to make a copy of this document, there is no evidence that he did. Another document was the court order from Germany ordering the return of fifty thousand deutsche marks. This represented money Alexander had paid for bail relating to his German charges, but which was returned due to the extradition request by the

United States. Rivera made no inquiries, conducted no investigation, did not forward the documents to the Central Office, and made no effort to determine whether the Central Office was aware of all of the facts submitted to him by Alexander.

When Alexander approached Warden Perrill with his complaint, Perrill checked with Rivera and was informed that the recalculation was based on a Central Office memorandum. When asked by Alexander if Perrill was "a little bit concerned about [the fact that Alexander wasn't supposed to be there]," Perrill answered: "No, I'm not concerned about it at all, Alexander ..., I don't really care what you think about it. You take them over to Rivera." Defendants' Motion for Summary Judgment on the Issue of Damages, Exhibit 1 at 42:13–22. Satisfied with Rivera's management of the matter, Perrill took no further action and made no further inquiry into Alexander's claims.

Frustrated, Alexander filed his first writ of habeas corpus before this Court. As Alexander had not exhausted his administrative remedies within the prison system, that writ was dismissed without prejudice. After those administrative appeals proved unsuccessful, Plaintiff returned to federal court with his second writ of habeas corpus attacking the actions of these defendants. At hearing, this Court immediately ordered Alexander released on bond. On February 11, 1987, this Court issued an order correcting the miscalculation. *See Alexander v. Perrill,* CIV 86–429–TUC–RMB (February 12, 1987) (order granting Petitioner's writ of habeas corpus and requiring the Bureau of Prisons to recompute Petitioner's sentence giving him credit for the time period of January 13, 1984 to October 9, 1984). Respondents did not appeal that order.

Alexander filed the present Complaint alleging that the above conduct violated his

---

**2.** Bureau of Prisons Program Statement 5880.24 states in pertinent part:

   Credit will be given for all time spent in non-federal or foreign custody when the underlying basis for custody in fact is a federal warrant. For example, if a federal warrant is issued and the prisoner is arrested by county police or foreign officials on the basis of the federal warrant, credit will be given from the date of

arrest to the date of sentence for all days in custody. Inquiries or requests for foreign jail time credit, along with copies of the judgment and commitment and credit, along with copies of any documentation in the institution or in the possession of the inmate, must be sent to the central office Chief of Administrative systems for verification and monitoring purposes.

**704**

constitutional rights. On September 19, 1988, this Court denied Defendants' motion for summary judgment on the defense of qualified immunity finding that the conduct at issue constituted deliberate indifference to Alexander's constitutional or statutory rights. *See Alexander v. Perrill,* CIV 87–582 TUC–RMB (September 19, 1988). That decision was affirmed by the Ninth Circuit. *See Alexander v. Perrill,* 916 F.2d 1392 (9th Cir. 1990) (holding that because defendants breached their well established duty to investigate, they were not entitled to qualified immunity).

## IV. DISCUSSION

On the eve of trial, both parties have filed cross-motions for summary judgment. Alexander asserts that he is entitled to judgment on the issue of liability and that the only question of fact which remains is the amount of his damages. Alexander also seeks a declaratory judgment that prison officials cannot recalculate jail credits on an expired sentence without providing prior notice and a hearing. In contrast, Perrill and Rivera argue that as a matter of law that they are not liable because there is no nexus between their conduct and Alexander's damages.

The parties in this case attempt to reargue issues previously litigated. The Ninth Circuit held that Perrill and Rivera were under a duty to investigate the claims of computational errors in the calculation of Alexander's prison sentence. *Alexander,* 916 F.2d at 1398. Additionally, the Ninth Circuit found that Bureau of Prisons Program Statement 5880.24 does not relieve prison officials of their duty to investigate complaints by prisoners under 28 C.F.R. § 542.11(a) or vest exclusive jurisdiction over the investigation of claims for foreign jail credits in the Central Office. *Id.* at 1399. Perrill and Rivera had a duty to send to the Central Office "copies of any documentation in the institution or in the possession of the inmate." *Id.* This continued reliance on the Central Office memorandum without further investigation constituted a breach of duty by Perrill and Rivera. *Id.* Thus, Alexander need not argue "duty" or "breach," that has already been established. Similarly, Perrill and Riv-

era cannot continue to argue that their conduct was reasonable. It has already been decided that it was not. The only issue to be decided by the Court today is whether this conduct is sufficiently egregious to find the Defendants liable to Alexander such that this matter can proceed to trial on the issue of damages.

### A. *Liability.*

■ A factually similar case also arising out of the Ninth Circuit was found by the *Alexander* appellate panel to be particularly instructive. Relying on *Haygood v. Younger,* 769 F.2d 1350 (9th Cir.1985) (en banc), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986), *Alexander* stated:

> In *Haygood,* we held that a judgment against prison officials was proper because 'after being put on notice, [the prison officials] simply refused to investigate a computation error.' *Id.* We found that the failure to investigate was in itself sufficient evidence to support a finding of liability.

*Alexander,* 916 F.2d at 1398 (citing *Haygood,* 769 F.2d at 1355). However, the Ninth Circuit court clearly stated that the only issue before it was whether there was a clearly established duty to investigate. *Id.* at 1398 n. 11. *Alexander* explicitly did not concern itself with whether the plaintiff could ultimately establish liability. *Id.* at 1397 n. 9. Thus, this Court looks to the district court and Ninth Circuit decisions in *Haygood v. Younger, supra,* for guidance.

In *Haygood,* the California Adult Authority erroneously determined that the Plaintiff's imposed term for escaping from prison did not begin to run until the plaintiff finished serving a term for a robbery which took place after the escape. *Haygood v. Younger,* 527 F.Supp. 808, 809 (E.D.Cal.1981). After receiving letters from the plaintiff protesting the computation of his sentence, each defendant made a brief inquiry into the plaintiff's situation, determined that he was serving consecutive terms and that the Adult Authority had calculated his sentence correctly. *Id.* at 816. One of the Defendants sent the plaintiff a two line response with a California Attorney General's opinion which the Defendant felt supported the sentence calculation

of the *Haygood* plaintiff. *Id.* The other defendant sent plaintiff a brief letter containing the same information, to which he attached the same attorney general opinion. *Id.*

The *Haygood* district court held that a "jury could conclude that: (a) the plaintiff was deprived of his liberty; (b) the deprivation occurred without due process of law; and (c) that these defendants subjected plaintiff to the deprivation or caused him to be subjected to it." *Id.* at 818. The *Haygood* Defendants, "after being put on notice, simply refused to investigate a computational error." *Haygood,* 769 F.2d at 1355 (citing *Haygood,* 527 F.Supp. at 823). The Ninth Circuit, affirming the district court, held that based on the facts before it, "there was adequate evidence from which the jury could have found liability under the appropriate standard of 'deliberate indifference.'" *Haygood,* 769 F.2d at 1355.

Indeed, the *Haygood* facts are less egregious than the facts before the Court today. Here, Perrill did nothing more than check with Defendant Rivera for a verbal status report. Rivera did nothing more than continue to rely on the Central Office memorandum, essentially ignoring Alexander's protestations. As in *Haygood,* these two defendants after being put on notice, simply refused to investigate Alexander's claims of error. Instead, they chose to extend his sentence by cavalierly continuing to rely on the Central Office memorandum.

Defendants attempt to argue that they should not be held liable because the Central Office had all the documents in its possession to reach the correct result. Additionally, the Defendants contend that they cannot be held liable because they did not have the actual authority to correct any recalculation error. To accept these arguments would require the Court to ignore the realities of bureaucratic paradigms. This would allow one govern-

mental agency to shirk its duties by relinquishing responsibility to another agency. The Court finds such finger pointing untenable. The cost is too great.

When an individual's freedom hangs in the balance and an official has been put on notice of a possible error affecting that freedom, it is incumbent upon the official to ensure that our democratic processes are not apathetically forfeited. Had the defendants notified the Central Office that a complete review of Alexander's file was required, the crucial documents would have come to light and been properly evaluated. For example, there is no evidence that the foreign documents in the Central Office file had been translated from German into English. A request for an investigation by the Defendants at a minimum would have resulted in this failure being corrected.

Inmates must be able to rely on the conscientiousness of the prison officials charged with their care. Therefore, the Court finds that Perrill and Rivera were deliberately indifferent to Alexander's requests for an investigation and it matters not that the Defendants lacked the authority to change the sentence computation. Consequently, Warden Perrill and Rivera are liable to Alexander for their failure to investigate Alexander's claim regarding the miscalculation of his jail credits.

Defendants seek summary judgment on the issue of damages. The issue of damages is one of fact rather than law. *Minthorne v. Seeburg Corp.,* 397 F.2d 237, 244 (9th Cir. 1968). Therefore, this issue is left for the trier of fact.

### B. *Fifth Amendment Right to Due Process.*[3]

Perrill and Rivera also attempt to argue that they can recalculate an inmate's sentence without prior notice or a hearing.[4] Based on the standard set forth in *Haygood,*

---

**3.** While the fifth amendment is implicated in this case because of it arises from federal conduct, the analyses applied to fourteenth amendment violations apply equally here as well. *See Piechowicz v. U.S.,* 885 F.2d 1207, 1214 n. 9 (4th Cir.1989).

**4.** Counsel for Defendants assures the Court that declaratory relief on this issue is not necessary because he will request that in the future Defendants seek legal counsel before attempting to re-incarcerate an inmate based upon a recalculated sentence. The Court finds little comfort in such an assurance.

this is an erroneous assumption. *Haygood,* 769 F.2d at 1355–1358.

Adequate due process depends on the nature of the interest affected. *Morrissey v. Brewer,* 408 U.S. 471, 481–82, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). The more important the interest, the more important the procedural safeguards required. *Id.* In utilizing the *Mathews v. Eldridge* balancing test, it is necessary to weigh the risk of erroneous deprivation, the state's interest in providing, or not providing, specific procedures, against the strength of the individual's interest. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Here, Alexander had served and been discharged from his sentence. He began improving his station by attending the University of Arizona while he completed a separate six month sentence at a half-way house. Without notice, he was arrested on what was incorrectly identified as a "parole violation" and returned to FCI–Tucson. No hearing of any kind was held. Rather, after being informed that his jail credits were being revoked, Alexander met with apathetic defendants who did not question the accuracy of the Central Office's determination.

As in *Haygood,* the denial of Alexander's due process occurred the minute Warden Perrill and Rivera acted on the Central Office's recalculation of Alexander's jail credits without providing timely notice and an opportunity to be heard. *See Haygood,* 769 F.2d at 1358. If these minimal procedures had been provided at the outset, Alexander would have been able to offer evidence in support of his claims. For example, Alexander could have presented the certified German court documents which established that he was entitled to the jail and presentence credits. The documents could have been translated into English and prison officials with expertise in calculating foreign jail credits could have been properly utilized. It was only by means of habeas corpus that Alexander obtained the justice he deserved.

Based on the foregoing, Plaintiff is entitled to declaratory judgment that prison officials cannot recalculate an expired sentence without prior notice and a hearing.

## V. ATTORNEYS' FEES

At hearing, Plaintiff made a request for attorneys' fees and costs. Pursuant to 42 U.S.C. § 1988 attorneys' fees in a case such as this may be awarded in the discretion of the court to a "prevailing party." 42 U.S.C. § 1988 provides

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil rights Act of 1964, the court, in its discretion may allow the prevailing party, other than the United States, a reasonable attorneys' fee as part of the costs.

42 U.S.C. § 1988. The Supreme Court has recognized plaintiffs as prevailing parties if they have "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bring the suit." *Texas State Teachers v. Garland Indep. School Dist.,* 489 U.S. 782, 791, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989). Here, Alexander has prevailed on all of his claims with damages as the only remaining issue. Therefore, Plaintiff is entitled to recover attorneys fees and costs. Such an application should be submitted upon the conclusion of the trial.

## VI. CONCLUSION

**THEREFORE, IT IS ORDERED** that Plaintiff's Motion for Summary Judgment is **GRANTED** on the issue of liability and that the Bureau of Prisons shall not recalculate jail credits on an expired sentence without due process of law by providing prior notice and an opportunity to be heard; Plaintiff is entitled to attorneys' fees pursuant to 42 U.S.C. § 1988.

**IT IS FURTHER ORDERED** that Defendants' Motions for Summary Judgment on the Issue of Damages and Cross–Motion for Summary Judgment are **DENIED.**